IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PATRICK PIZZELLA,                    :      CIVIL ACTION
                                     :      NO. 18-4663
                                     :
          Plaintiff,                 :
                                     :
     v.                              :
                                     :
EMPIRE DINER, et al.,                :
                                     :
          Defendants.                :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              April 27, 2021

## I. INTRODUCTION

Patrick Pizzella, a former acting Secretary of Labor ("Plaintiff"), brought this Fair Labor Standards Act ("FLSA") action against Empire Diner and certain individuals who own and/or manage it ("Defendants"), alleging violations of the FLSA's minimum wage, overtime, and recordkeeping requirements. Plaintiff and Defendants filed cross motions for summary judgment.

For the reasons enumerated below, Defendants' motion for summary judgment will be denied in full. Plaintiff's motion for summary judgment will be denied in part and granted in part. The motion will be granted in relation to establishing minimum wage, overtime, and recordkeeping violations. The motion will be

denied as to the issues of back wages, liquidated damages, injunctive relief, whether Defendant Engin Gunaydin is an employer under the FLSA, and whether Defendants' violations were willful.

## II.  BACKGROUND[1]

Defendants own, operate, and/or manage Empire Diner ("Empire"), a 24-hour restaurant in Lansdowne, Pennsylvania. The diner employs a variety of employees, such as servers, kitchen workers, bussers, and cashiers. Defendants' employees handle, sell, and work on goods and materials moved in or produced for interstate commerce, such as meats and produce sourced outside of Pennsylvania. The annual gross revenue for Empire between 2015 and 2018 ranged from $1,827,407-$2,014,837.

A Wage and Hour ("WH") investigation began at Empire on August 10, 2017. On May 3, 2018, WH investigator Gyasi Martin held a final meeting with Defendants Ihsan Gunaydin ("Ihsan"), Engin Gunaydin ("Engin"), and Certified Public Accountant Ali Gunaydin ("Ali"). During the relevant time period (defined as January 12, 2015, to March 10, 2019), Ihsan was the owner of Empire, and was responsible for assigning work, scheduling work,

---

[1]     As required at the summary judgment stage, the Court views the facts "in the light most favorable" to the nonmoving party and draws "all reasonable inferences" in that party's favor. <u>Young v. Martin</u>, 801 F.3d 172, 174 (3d Cir. 2015).

and supervising employees. Ihsan and Engin possess knowledge of and were involved with decisions related to Empire's compensation policies, but Ihsan is the one that made the ultimate decisions relating to the compensation policies.

The undisputed facts show that during the relevant time period, bussers made at least $7.75 per hour. Servers were paid $2.83 per hour. Defendants attempted to claim those servers' tips as a credit toward the $7.25 minimum wage obligations under section 203(m) of the FLSA, 29 U.S.C. § 203(m), which Plaintiff argues they were not entitled to do.

Plaintiff argues that Defendants prohibited Empire servers from keeping all of their tips and required them to provide anywhere from 10-15% of their tips to Defendants and/or the person working at the cash register. Defendants argue that the tip pool was voluntary and that there was no suggested amount for the tip pool. They allege that servers were encouraged, but not required, to contribute a small amount of their tips to the tip pool, and would indicate on a piece of paper how much they put into the tip pool. Defendants admit that the tip pool was used to contribute to the bussers' wages whenever possible.

Plaintiff argues that Defendants intentionally created a scheme wherein the payroll records always showed $7.63 per hour for each server, regardless of the amount of tips received or hours worked. Defendants argue that it was not intentional.

Rather, Empire sought to have servers record their tips, but they allegedly either would not report the tips, or the reports were inaccurate. Consequently, Empire paid each server $2.83, plus all reported credit card tips. If that number did not reach minimum wage, Empire estimated the amount of cash tips received by the server because the servers were allegedly uncooperative and would not tell Defendants how much they were making in tips. In relation to the $7.63 number, Ihsan testified that he used a roundabout number to record because he believed that the servers made more than the $4 per hour that was being reported.

Defendants also admit that they failed to inform employees that Defendants were claiming their tips as a basis for paying them less than the minimum wage. After the WH investigation, and on or about May 2018, Empire created a new Employee Handbook. The Handbook included a "Notice to Tipped Employees" which outlined the requirements found in section 203(m) of the FLSA. Plaintiff argues that Defendants paid certain employees less than $7.25 per hour even after the WH investigation, which Defendants dispute.

In relation to overtime, Defendants failed to pay some of their employees the proper section 207 overtime premium of at least time-and-one-half their regular rates for hours worked in excess of forty per workweek. See 29 U.S.C. § 207(a)(1).

Defendants also failed to keep records of their employees' wages, hours, and other conditions of employment. Defendants admit that they kept neither the records showing the amounts servers provided nor the records concerning the payments they made to bussers from the servers' tips. Defendants also did not keep the records of the amount of tips that servers retained.

## III. LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court views the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of

material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56).

## IV. DISCUSSION

Both parties have filed motions for summary judgment. When confronted with cross-motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2720 (4th ed. 2021). This includes placing the burden on the movant to demonstrate the absence of a genuine dispute of material fact and on the non-movant to show the existence of one. However, given that the arguments made in Defendants' motion for summary judgment are nearly identical to the arguments made in response to Plaintiff's motion for summary judgment, much of the analysis discussed in relation to

Plaintiff's motion will be incorporated by reference into the analysis of Defendants' motion, except that the burdens will be appropriately placed.

The parties agree that Empire is a covered enterprise under the FLSA and that Ihsan is a covered "employer" under the FLSA, but dispute the remaining issues discussed below.

### A. Whether Engin Is an "Employer" Under the FLSA

#### 1. Plaintiff's Motion

First, Plaintiff argues that Engin is an "employer" within the meaning of the term under the FLSA, which Defendants dispute. The term is defined in the FLSA as "any person acting directly or indirectly in the interest of an employer in relation to an employee." Falk v. Brennan, 414 U.S. 190, 195 (1973) (quoting 29 U.S.C. § 203(d)).

The Third Circuit has recognized that the FLSA's definition of "employer" is "the broadest definition that has ever been included in any one act." In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig., 683 F.3d 462, 467-68 (3d Cir. 2012) (quoting United States v. Rosenwasser, 323 U.S. 360, 363 n.3 (1945)). Courts utilize the "economic reality" test for determining whether individuals are employers under the FLSA. See id. at 467. "Economic reality" depends on the "totality of the circumstances" rather than on rigid "technical concepts of the

employment relationship." <u>Haybarger v. Lawrence Cty. Adult Prob.</u>
<u>& Parole</u>, 667 F.3d 408, 418 (3d Cir. 2012) (quoting <u>Hodgson v.</u>
<u>Arnheim & Neely, Inc.</u>, 444 F.2d 609, 612 (3d Cir. 1971), <u>rev'd</u>
<u>on other grounds</u>, 410 U.S. 512 (1973)). "Significant control" is
sufficient to establish employer status, but ultimate control is
not required. <u>Enterprise Rent-A-Car</u>, 683 F.3d at 468.

The Third Circuit acknowledged the flexibility of the
FLSA's "employer" definition by adopting four non-exhaustive
factors: "(1) authority to hire and fire employees; (2)
authority to promulgate work rules and assignments, and set
conditions of employment, including compensation, benefits, and
hours; (3) day-to-day supervision, including employee
discipline; and (4) control of employee records, including
payroll, insurance, taxes, and the like." <u>Id.</u> at 469. The Third
Circuit stressed that the analysis should not be confined to
these four criteria, and that the court "must instead consider
all the relevant evidence, including evidence that does not fall
neatly within one of the above factors." <u>Id.</u> Other indicia of
"significant control" suggesting that a person was an employer
"may be persuasive" when incorporated with these four factors.
<u>Id.</u> at 470.

The parties agree that Engin is a manager and not an owner
of the diner. However, Plaintiff argues that Engin was an
employer because he was responsible for hiring employees,

8

recommending that employees be hired, and had the authority to schedule, fire, and set the conditions of employment for employees. Plaintiff further alleges that Engin (1) provided training to new employees; (2) assigned servers to sections in the restaurant, directed the work of employees, and enforced workplace rules; (3) helped Ihsan to distribute the weekly pay to employees; (4) was highly involved in collecting servers' tips and in the tip-sheet recordkeeping system; and (5) informed tipped employees of their rate of pay and followed up with payroll when an employee was not making minimum wage.

On the contrary, Defendants argue that although Engin was able to make recommendations regarding hiring, he did not have authority to hire or fire employees. Defendants also argue that Ihsan, not Engin, was the one who scheduled the employees. Defendants further allege that Engin did not have the authority to set conditions of employment. Construing the record in the light most favorable to Defendants, the scope of Engin's authority in relation to the employees at Empire is a genuine dispute of material fact that does not warrant granting summary judgment to Plaintiff on the issue of whether Engin is an "employer" under the FLSA.

## 2. Defendants' Motion

Defendants argue that Engin is clearly not an "employer" under the FLSA based on the same arguments outlined above.

Plaintiff disputes Defendants' claims and argues that the scope of Engin's authority is broader and that he had the authority to hire and fire employees, set conditions of employment, etc. Construing the record in the light most favorable to Plaintiff, the scope of Engin's authority in relation to the employees at Empire is still a genuine dispute of material fact that does not warrant granting summary judgment to Defendants on the issue of whether Engin is an "employer" under the FLSA.

### B. Minimum Wage Requirements Under the FLSA

Section 206 of the FLSA requires employers to pay covered employees minimum wage of at least $7.25 per hour for each hour worked. 29 U.S.C. § 206(a). However, under some circumstances and by complying with the provisions of the tip credit under section 203(m), an employer can pay $2.13 per hour ($2.83 per hour under Pennsylvania law, see 34 Pa. Cons. Stat. § 231.101(b) (2021)) to tipped employees and supplement that payment with tips in order to reach minimum wage. In order to avail themselves of the tip credit, Defendants' compliance with the FLSA must be strict. See Reich v. Chez Robert, Inc., 28 F.3d 401, 403-04 (3d Cir. 1994); 29 C.F.R. 531.59(b) (2020). Additionally, the requirements of section 203(m) must be satisfied even if the employees received wages and tips that together satisfy the minimum wage requirement. See Reich, 28

F.3d at 404 (quoting <u>Martin v. Tango's Rest., Inc.</u>, 969 F.2d 1319, 1323 (1st Cir. 1992)).

### 1. Plaintiff's Motion

Plaintiff argues that Defendants failed to comply with the requirements of section 203(m) in multiple ways. Because the Court finds that Defendants failed to comply with the notice requirements under section 203(m), the Court need not consider Plaintiff's other arguments with respect to this section.

The FLSA requires employers to "inform" their tipped employees of the provisions of the section 203(m) tip credit prior to claiming the tip credit. <u>See</u> 29 U.S.C. § 203(m). The 2011 tip credit regulation specifies the information that employers must provide to their tipped employees:

> [1] The amount of the cash wage that is to be paid to the tipped employee by the employer; [2] the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, [3] which amount may not exceed the value of the tips actually received by the employee; [4] that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and [5] that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

29 C.F.R. § 531.59(b) (2020).

The failure to provide notice is not merely a technical violation, but a basis for denying employers the tip credit. Courts, including the Third Circuit, have made it clear that

notice is vital, and the remedy for inadequate notice is denial
of the section 203(m) tip credit, liability for the full minimum
wage of $7.25 per hour, and allowing affected tipped employees
to keep all tips received. See, e.g., Reich, 28 F.3d at 403
(citing Martin, 969 F.2d at 1322-23). Employers are also not
entitled to credit their employees' tips received toward their
liability for back wages due. Id. at 404. "If the penalty for
omitting notice appears harsh, it is also true that notice is
not difficult for the employer to provide." Id. (quoting Martin,
969 F.2d at 1323).

Here, Defendants admit they only told the servers that they
would be paid $2.83, plus tips and overtime. Engin Dep. 31:2-12,
ECF No. 40-9. Defendants assumed that servers "most likely know
about tip credit." Ihsan Dep. 55:8-13, ECF No. 40-8.[2] These
depositions demonstrate that Defendants did not specifically
inform servers that tips would be credited toward the minimum
wage obligation, and that Defendants did not provide servers
with notice of all the elements contained in section 203(m) or
29 C.F.R. § 531.59(b).[3]

---

[2]     Even if this was true, Defendants cite no legal authority for the claim
that general awareness is sufficient to show compliance with the section
203(m) notice requirement.
[3]     Subsequent to the investigation, Defendants amended their employee
handbook to include the required notice under section 203(m), but the same
was not provided to employees prior to the investigation.

Construing the record in the light most favorable to Defendants, summary judgment is warranted for Plaintiff and the Court finds that there is no genuine dispute of material fact that Defendants violated the minimum wage requirements under the FLSA.

### 2. Defendants' Motion

Defendants argue that sufficient notice was given to employees concerning the tip credit as a result of a poster in the kitchen "explaining the wage information." Defs.' Mot. Summ. J. 25, ECF No. 44-2. However, they do not attach a copy of the poster as an exhibit to their motion, and it was not produced in discovery. Even if a poster could be held to constitute sufficient notice (which the Court need not address), there is no evidence in the record as to the actual content of the poster, so Defendants have failed to meet their burden under Federal Rule of Civil Procedure 56(c)(1) of supporting their factual position. On the other hand, and for the reasons explained above, Plaintiff has met this burden by pointing to relevant parts of the record demonstrating that Defendants did not provide the proper notice under section 203(m).

Construing the record in the light most favorable to Plaintiff, summary judgment is not warranted for Defendants and the Court finds that there is no genuine dispute of material

fact that Defendants violated the minimum wage requirements
under the FLSA.

**C.    Overtime Requirements Under the FLSA**

Section 207 of the FLSA forbids an employer from employing
any worker "for a workweek longer than forty hours unless such
employee receives compensation . . . at a rate not less than one
and one-half times the [employee's] regular rate" for the excess
hours. 29 U.S.C. § 207(a)(1). Where an employer takes a tip
credit, overtime is calculated based on the full minimum wage
(i.e., $7.25 per hour), not on the lower direct (or cash) wage
payment. See 29 C.F.R. §§ 531.60, 778.5 (2020).

1. Plaintiff's Motion

Here, Plaintiff argues that Defendants violated section 207
by paying their servers an overtime premium of one and one-half
times their cash wage of $2.83 per hour, rather than one and
one-half times the full minimum wage of $7.25 per hour.
Defendants first argue that "[t]o the extent Defendants paid
wrongful amounts for overtime, they have rectified that and now
use the correct formula," and that "to the extent there were any
miscalculations, it was a very small number. Even Mr. Martin
stated . . . that the total due for overtime wages was . . .
($17[,]291.61 in total)." Defs.' Resp. Opp'n Pl.'s Mot. Summ. J.
38-39, ECF No. 43-2. But Plaintiff does not dispute this number,
and no authority supports the proposition that rectifying the

overtime issue somehow forgives the overtime violations that occurred.

Defendants also argue that to the extent there were overtime mistakes, they were the fault of their accountant, and Defendants should not be held liable. But no authority supports the proposition that a mistake by the employer's accountant is a defense to a charge of failing to pay overtime wages. In any case, Defendants' accountant, Ali Gunaydin (one of Defendants' family members), testified that Empire is a family business and that the business "[d]oesn't operate without family," so it is apparent that Ali, as Empire's accountant, was part of the family business and acting on Defendants' behalf. Ali Dep. 17:14-15, ECF No. 40-19. He also supported Plaintiff's assertion that an improper overtime calculation was being used. Ali Dep. 72:18-73:12.

Construing this record in the light most favorable to Defendants, summary judgment is warranted for Plaintiff and the Court finds that there is no genuine dispute of material fact that Defendants violated the overtime requirements under the FLSA.

### 2. Defendants' Motion

In its motion for summary judgment on the overtime requirements claim, Defendants again attempt to place blame on their accountant for any overtime violations that occurred. This

argument was unpersuasive even when the record was construed in Defendants' favor. See supra Section IV.C.1. Here, with the record construed in Plaintiff's favor, it fails again.

**D.   Recordkeeping Requirements Under the FLSA**

Section 211(c) of the FLSA requires employers to "maintain accurate records to ensure that all workers are paid . . . for every hour worked." Williams v. Tri-County Growers, Inc., 747 F.2d 121, 128 (3d Cir. 1984) (citing Wirtz v. Williams, 369 F.2d 783, 785 (5th Cir. 1966)). More specifically, 29 C.F.R. § 516.28(a) (2020) requires employers to maintain and preserve records containing, inter alia, the "[w]eekly or monthly amount reported by the employee, to the employer, of tips received," and the "[a]mount by which the wages of each tipped employee have been deemed to be increased by tips as determined by the employer."

### 1. Plaintiff's Motion

Plaintiff alleges that Defendants failed to keep accurate records of, inter alia, the amount of cash tips received by servers and the amount by which servers' wages were increased by tips. Thus, Plaintiff argues that it is impossible to determine whether all workers were paid for every hour worked, i.e., whether or not the servers actually received sufficient tips to bring their hourly rate up to $7.25. Defendants admit to making

an estimate of such tips. <u>See</u> Defs.' Mot. Summ. J. 34, ECF No. 44-2.

Construing this record in the light most favorable to Defendants, summary judgment is warranted for Plaintiff and the Court finds that there is no genuine dispute of material fact that Defendants violated the recordkeeping requirements under the FLSA.

### 2. Defendants' Motion

Defendants argue that they should not be liable for any recordkeeping violations because the only reason they estimated the servers' cash tips was because (1) Defendants knew that the servers were making at least minimum wage, and (2) the servers refused to cooperate and tell Defendants how much they were making in cash tips due to the potential tax consequences. <u>See</u> Defs.' Mot. Summ. J. 34. However, no authority supports either of these propositions as appropriate excuses for failing to comply with the recordkeeping requirements.

Construing the record in the light most favorable to Plaintiff, and incorporating the analysis above, <u>see</u> <u>supra</u> Section IV.D.1, summary judgment is not warranted for Defendants and the Court finds that there is no genuine dispute of material fact that Defendants violated the recordkeeping requirements under the FLSA.

### **E. Whether Defendants' Violations Were Willful**

While the general statute of limitations for minimum wage and overtime violations under the FLSA is two years, an employer's willful conduct extends the back wage period by an additional year. 29 U.S.C. § 255(a). Whether a given set of facts constitutes willfulness is a question of fact. Souryavong v. Lackawanna Cnty., 872 F.3d 122, 126 (3d Cir. 2017) (explaining that willfulness is a question of fact, but it can be decided as a matter of law if there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party). A violation of the FLSA is considered willful if the employer knew that its conduct was prohibited by the Act or showed reckless disregard for the legality of the conduct. McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 135 (1988).

## 1. Plaintiff's Motion

Plaintiff argues that Defendants willfully violated the Act in a variety of ways. First, they argue that Defendants knew enough about what the FLSA required to create false payroll records and false tip records to give the appearance of compliance. Defendants argue that these violations were not willful because they attempted to accurately record the tips and simply could not because of the servers' refusal to accurately report their tips. Defendants allege that they then acted in good faith by making an estimate as to the amount of tips because they already knew that servers made well in excess of

minimum wage. Even though Defendants knew what the relevant minimum wage was and therefore how much in tips they needed to "estimate," it is not clear that they knew they could not make estimates as to the servers' tips in a situation in which they allegedly knew that servers made minimum wage and were inaccurately reporting their tips to Defendants.

Relatedly, Plaintiff argues that Defendants' failure to keep records of the tips they collected from servers and the amount they used to pay bussers' wages suggests willfulness. But Defendants have continuously asserted that they were unaware of this requirement and would have kept the records if they had been aware.

Plaintiff next argues that Defendants' actions were willful because they knew that the minimum wage was $7.25 per hour, and despite having an obligation to ensure that employees were being paid that much, passed this obligation through to employees and simply assumed that employees were making that much because none of them complained to Defendants about it. However, although Defendants may have known what the minimum wage is and that they were required to pay employees as such, it is not clear whether they knew that they were not entitled to rely on employees to inform them when their pay dropped below the minimum wage.

Plaintiff also argues that Defendants' violations were willful because of their persistent interference with the WH

investigation. For example, Defendant Engin allegedly told server Frances Tepper that the investigation was underway and told her to lie about having to pay for breakage fees and about the number of bussers who worked at Empire. Additionally, Engin allegedly told overnight manager Marie Sheeran that if she was contacted by the Department of Labor ("DOL") she should tell them that she only worked forty hours per workweek, when in fact she worked approximately fifty-four to fifty-eight hours per workweek. Defendant Ihsan then allegedly told her to use two separate time cards, one which would show she worked only eight hours per day and the other for the rest of her daily hours. Lastly, Defendant Ihsan allegedly told Tarique Williams not to clock in any hours over forty hours per workweek (despite the fact that he worked approximately sixty hours per workweek) and that he should be loyal to Empire. All of this interference is denied by Defendants, who point to the over seventy affidavits of other employees who did not corroborate any interference.

Lastly, Plaintiff argues that Defendants' willfulness can be established as a result of their prior investigation. After a DOL investigation in 1999, Defendants agreed to pay $64.46 in back wages to two employees. However, it is not clear whether the violations in that case were related to the same violations alleged in this case, so the Court cannot say one way or the other whether this investigation was sufficient to put

Defendants on notice of any wrongdoing as it relates to this case. Relatedly, on or about May 3, 2018, the WH investigator in this case explained the overtime requirements to Defendants. However, even with this information, Plaintiff alleges that Defendants continued their violations. Defendants argue that any overtime violations were not willful because they relied upon their accounting firm for their overtime payments and were not aware that the payments were being handled incorrectly.

Construing the record in the light most favorable to Defendants, the foregoing arguments raise a genuine dispute of material fact as to whether Defendants' violations were willful. Thus, the Court will not grant summary judgment to Plaintiff on this issue.

### 2. Defendants' Motion

Defendants make the same arguments as to why the Court should find that their violations were not willful as they made in response to Plaintiff's motion. Construing the record in the light most favorable to Plaintiff, and incorporating the analysis above, see supra Section IV.E.1, there is still a genuine dispute of material fact as to whether Defendants' violations were willful. Thus, the Court will not grant summary judgment to Defendants on this issue.

### F. Back Wages

### 1. Plaintiff's Motion

Plaintiff argues that based on eight employee declarations, Defendants' payroll, and Defendants' admissions, Defendants owe back wages in the amount of $664,971.25. However, this figure is premised on Plaintiff's allegation that Defendants' violations were willful. Given that the willfulness issue raises a genuine dispute of material fact, as explained previously, see supra Section IV.E, Plaintiff's motion for summary judgment as to the issue of the appropriate amount of back wages is denied.

### 2. Defendants' Motion

Defendants argue, inter alia, that compensation is "entirely unnecessary" because "all Empire Diner employees made at least minimum wage, if not more." Defs.' Mot. Summ. J. 44, ECF No. 44-2. Regardless, the requirements of section 203(m) are mandatory and must be satisfied strictly. Therefore, back wages may be owed even if the employees received wages and tips that together satisfy the minimum wage requirement. See Reich v. Chez Robert, Inc., 28 F.3d 401, 404 (3d Cir. 1994) (citing Martin v. Tango's Rest., Inc., 969 F.2d 1319, 1323 (1st Cir. 1992)). Thus, Defendants' motion for summary judgment as to the issue of the appropriate amount of back wages is also denied.

### G. Liquidated Damages

Under section 216(c) of the FLSA, the DOL may recover both unpaid wages and an additional equal amount in liquidated damages for violations of the minimum wage and overtime

requirements. See 29 U.S.C. § 216(c). These liquidated damages are not punitive, but compensatory, i.e., they "compensate employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due." Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907 (3d Cir. 1991) (quoting Marshall v. Brunner, 668 F.2d 748, 753 (3d Cir. 1982)).

In challenging the appropriateness of liquidated damages, the employer bears the "plain and substantial" burden of establishing both good faith and reasonable grounds for the violation. Id. at 907-08 (quoting Williams v. Tri-County Growers, Inc., 747 F.2d 121, 128-29 (3d Cir. 1984)). "If the employer fails to come forward with plain and substantial evidence to satisfy the good faith and reasonableness requirements, the district court is without discretion to deny liquidated damages." Williams, 747 F.2d at 129 (first citing Marshall, 668 F.2d at 753; then citing Laffey v. Nw. Airlines, Inc., 567 F.2d 429, 465 (D.C. Cir. 1976), abrogated on other grounds sub nom. McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988); then citing Richard v. Marriott Corp., 549 F.2d 303, 305-06 (4th Cir. 1977); then citing McClanahan v. Mathews, 440 F.2d 320, 322 (6th Cir. 1971); and then citing Rothman v. Publicker Indus., 201 F.2d 618, 620 (3d Cir. 1953)).

To carry its burden of establishing good faith, an employer must first show that it "took affirmative steps to ascertain the

Act's requirements, but nonetheless, violated its provisions."
Martin, 940 F.2d at 908. The employer has a duty to ascertain
the FLSA's requirements and may not wait for complaints from
others, such as employees, before complying. See Keeley v.
Loomis Fargo & Co., 183 F.3d 257, 270 (3d Cir. 1999) (quoting
Williams, 747 F.2d at 129). The employer must prove "an honest
intention to ascertain and follow the dictates of the Act."
Marshall, 668 F.2d at 753 (citing Laffey, 567 F.2d at 464).

Next, the "reasonableness" requirement requires that the
employer had reasonable grounds for believing it was in
compliance. Id. Reasonableness is an objective standard, and to
satisfy the standard the employer must act "as a reasonably
prudent man" under the same circumstances. Brooks v. Vill. of
Ridgefield Park, 185 F.3d 130, 137 (3d Cir. 1999) (quoting
Addison v. Huron Stevedoring Corp., 204 F.2d 88, 92 (2d Cir.
1953)). "[I]gnorance alone is not sufficient in meeting the
objective test." Id. (citing Marshall, 668 F.2d at 753). Merely
reviewing case law and looking at the DOL website is not
sufficient to establish reasonableness either. See Sec'y United
States Dep't of Labor v. Am. Future Sys., Inc., 873 F.3d 420,
434 (3d Cir. 2017).

### 1. Plaintiff's Motion

Plaintiff argues that Defendants should be required to pay
liquidated damages in an amount equal to the amount of back

wages owed (i.e., $664,971.25) because they took no affirmative steps to comply with the FLSA and have no objectively reasonable grounds for their violations. However, given that the Court already denied Plaintiff's motion for summary judgment as to the appropriate amount of back wages, the Court must also deny Plaintiff's motion as to liquidated damages, which is based on the same amount. The proper amount of liquidated damages cannot be determined until the appropriate amount of back wages is determined.

### 2. Defendants' Motion

Defendants argue that they should not be liable for liquidated damages because they did not commit any violations knowingly and none of the people that they hired (e.g., their CPA) informed them of any issues. They also try to place blame on the Government for not informing them of their violations in 1999 and for waiting ten months during the 2017 investigation before informing them of the violations. However, as already explained, ignorance of the mandates of the FLSA and its implementing regulations is not an excuse. See Brooks, 185 F.3d at 137 (citing Marshall, 668 F.2d at 753). Additionally, the duty falls on the employer to ascertain the FLSA's requirements, i.e., the employer may not simply stand idly by and wait for others to inform them that violations are occurring. See Keeley, 183 F.3d at 270 (quoting Williams, 747 F.2d at 129).

Defendants also argue that the fact that they immediately took steps to rectify any issues after being told about them demonstrates that they were acting reasonably and in good faith. However, the Third Circuit has foreclosed employers from relying on actions taken after the DOL initiated an investigation. See Martin, 940 F.2d at 909. Consequently, and as a result of the foregoing, Defendants' motion for summary judgment will also be denied as to the issue of liquidated damages.

## H.    Injunctive Relief

### 1. Plaintiff's Motion

Plaintiff argues that even if Defendants are currently in compliance with the FLSA, injunctive relief is still warranted because Defendants' violations were willful, and their "pattern of misconduct" and "pervasive interference with the WH investigation" suggests a reasonable probability of recurrence of the violations. See Pl.'s Mot. Summ J. 44-45, ECF No. 40

The FLSA authorizes district courts to issue injunctive relief "restrain[ing] violations" of sections 206 and 207 upon a showing of cause. 29 U.S.C. § 217. In deciding whether to grant an injunction, courts consider "(1) 'the employer's past conduct'; (2) the employer's 'current conduct'; and (3) 'most importantly, whether the employer can be counted on to comply with the FLSA in the future.'" Acosta v. Osaka Japan Rest., Inc., No. CV 17-1018, 2018 WL 3397337, at *17 (E.D. Pa. July 12,

2018) (quoting <u>Acosta v. Cent. Laundry Inc.</u>, No. CV 15-1502, 2018 WL 1726613, at *10 (E.D. Pa. Apr. 10, 2018), <u>aff'd in part, rev'd in part on other grounds</u>, 790 F. App'x 368 (3d Cir. 2019)).

In <u>Osaka</u>, the defendants argued that "[w]hether issued under 29 U.S.C. § 217 or some other basis, an injunction is still equitable relief which can only be entered in accordance with Fed. R. Civ. P. 65." <u>Id.</u> (quoting Defs.' Br. 15). The court noted that the defendants "obliquely point out a central failing of Plaintiff's request for injunctive relief: Plaintiff seeks prospective injunctive relief on the basis of the summary judgment record alone, without a hearing of any sort." <u>Id.</u> The court thus denied the request for an injunction. <u>Id.</u>; <u>see also</u> <u>Hugler v. Cent. Laundry Inc.</u>, No. CV 15-1502, 2017 WL 11461954, at *2 n.2 (E.D. Pa. Mar. 24, 2017) (denying request for injunctive relief and noting that the court would only consider such request upon motion, Fed. R. Civ. P. 7(b), and after a hearing). Given that the same issue arises here, i.e., Plaintiff seeks prospective injunctive relief on the basis of the summary judgment record alone, without a hearing, Plaintiff's motion for summary judgment as to the issue of injunctive relief will be denied.

### 2. Defendants' Motion

Defendants argue that no injunctive relief is necessary because Defendants have rectified all alleged issues and there is no reason to assume that Defendants will fail to adhere to the FLSA's requirements in the future. However, as explained above, Plaintiff argues that even if Defendants are currently in compliance, injunctive relief is still warranted because Defendants' violations were willful, and their "pattern of misconduct" and "pervasive interference with the WH investigation" suggests a reasonable probability of recurrence of the violations. See Pl.'s Mot. Summ J. 44-45. As discussed previously, there are genuine disputes of material fact concerning whether Defendants' violations were willful and whether they interfered with the WH investigation. Under these circumstances, summary judgment is also not warranted for the Defendants in relation to injunctive relief.

## V. CONCLUSION

As a result of the foregoing, Defendants' motion for summary judgment will be denied in full. Plaintiff's motion for summary judgment will be denied in part and granted in part. The motion will be granted in relation to establishing minimum wage, overtime, and recordkeeping violations. The motion will be denied as to the issues of back wages, liquidated damages, injunctive relief, whether Engin is an employer under the FLSA,

and whether Defendants' violations were willful. An appropriate

order follows.