## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PATRICK PIZZELLA,                     :

             Plaintiff,        :

          v.                  :

EMPIRE DINER,                  :     Civil Action No.: 2:18-cv-04663-ER

             Defendants.     :

## DEFENDANTS' RESPONSE TO PLAINTIFF'S
## FINDING OF FACTS AND CONCLUSIONS OF LAW
## PURSUANT TO THE COURT'S ORDER

Defendants, Moslouglu, Inc., Ihsan Gunaydin, and Engin Gunaydin, by and through their undersigned attorneys, Bell & Bell LLP, hereby serve the following Response to Plaintiff's Proposed Findings of Fact and Conclusions of Law. Defendants maintain that Engin Gunaydin is not an employer for purposes of the FLSA, that Defendants violation of the FLSA was not willful, that Defendants had a good faith and reasonable basis for their actions, and that injunctive relief is inappropriate.

## **<u>INTRODUCTION</u>**

Remaining to be decided as a result of the 4-day bench trial are three primary issues: (1) whether manager Engin Gunaydin exercised such significant control over the business that he should be deemed an employer for purposes of the FLSA who is jointly liable for the damages; (2) whether Defendants' violations of the Act were willful such that the damages period should be increased from two years ($418,635.44) to three years ($596,103.89); (3) and whether

Defendants had a good faith and reasonable basis for their actions, or whether instead, the of back pay award should be doubled in this case where **no Empire employee has ever suffered any monetary harm or been undercompensated,** Plaintiff argues in circular fashion that employees have suffered economic harm because This Honorable Court awarded them back pay damages in its summary judgment decision.  That begs the question.  Empire employees were not awarded back pay because they had lost any money or ever fallen below minimum wage (indeed, the evidence adduced at trial shows that at least a random sample including a government witness angry about her employment were making multiples of the minimum wage and still felt cheated).  No, the servers were awarded back pay for the reasons that the government sought, a failure to give proper notice under the Act, and the failure to keep records required by the Act, and a miscalculation of overtime pay.  There was not then, nor is there now, after Trial, a suggestion that employees ever suffered monetary harm or were undercompensated. That issue has never been forwarded or supported by the government, and to argue it now in closing is misplaced.  More simply, the fact that the employees have been given a remedy under the statute for the technical failings of notice and recordkeeping doesn't mean anyone was underpaid.

## ARGUMENT

I.     **Engin Gunaydin is Not an Employer Under Section 3(d) of the FLSA Because Even if the *Enterprise Test* is Applicable, he Fails that Test.**

Even if the *Enterprise Test* governs this decision, Engin Gunaydin fails that test. Defendants argue that it may or may not apply based on the facts of *In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462, 468 (3d Cir. 2012) since the Third Circuit panel in that case was addressing co-employer liability only in the context of competing business entities and did not discuss liability of an individual manager.  Nor has the government offered

any reasoning or authority that the *Enterprise Test* should be extended or govern in the entirely different question of whether an individual has liability as a 3(d) employer.

Assuming *arguendo* that the *Enterprise Test* is controlling, Engin Gunaydin is not an employer. In *Enterprise* our Court of Appeals adopted the four following factors to test for co-employer status of a business entity: "(1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments, and *set conditions of employment, **including compensation, benefits, and hours***; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like." *In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig*., 683 F.3d 462, 468 (3d Cir. 2012) (emphasis added).  Engin Gunaydin does not satisfy the test.

Engin Gunaydin **was not the ultimate decision-maker with respect to hiring and firing decisions** and fails the first factor. (I.G. Dep. 16:6-9). (Trial Day 3 p. 26 ll. 1-3). The record is clear that all-important decisions required Ihsan's consent and approval. (I.G. Dep. 17:18-23). (Trial Day 3 p. 26 ll. 1-25).  Engin **had no authority to set conditions of employment including compensation and benefits**  and Factor 2 is not satisfied. (E.G. Dep. 16:1-3) (Trial Day 3 p. 26 ll. 6-8). For factor three Engin was **involved with day-to-day management, but decisions were made in collaboration with his father who was the boss** and to whom Engin had to defer. (*DPFOFCL ¶¶ 1-9)*.  Finally, **Engin Gunaydin does not control or retain employment or payroll records** at Empire Diner and factor four remains unsatisfied. (E.G. Dep. 16:1-3) (Trial Day 3 p. 28 ll. 24-25 to p. 29 ll. 1-15).  Engin Gunaydin is not an employer under the Enterprise Test that Plaintiff claims controls here.

It would be improper to hold Engin Gunaydin liable as an employer because he had neither the power to set the policies that violated the FLSA nor is there any evidence that he

**decided** to adopt a policy of not doing either task. Notably, Plaintiff concludes its response to Defendants' Findings of Fact and Conclusions of Law by favorably citing *Wise v. T-Man, LLC*, No. 1:14 CV 630, 2016 WL 3544715 (N.D. Ohio June 29, 2016) for the principle that it is proper to attach liability to individuals and entities making the decisions that allegedly violated FLSA. *They* claim this makes it fair to charge Engin as an employer because they argue that he made many of the decisions that resulted in violation of the FLSA.  That argument contradicts the factual evidence.  While it is true that the duty of giving the employees notice in accordance with the Act or overseeing that others were keeping records required by the Act would have fallen on him if it were Empire Policy, there is *no evidence* whatsoever that Engin Gunaydin had the power to set such a policy or that he **decided** to adopt a policy of not doing either task.  All of the record evidence shows that he and his father were both unaware of such requirements and thus no decision to violate the policies could have been made by either of them.  All of the evidence shows that even if there had been a decision to implement policies violative of the FLSA, Ihsan Gunaydin would have been the only person who could have made it.

Absent ownership or a role as officer or director it would be unfair to hold Engin Gunaydin liable as employer. Although the Plaintiff favorably cites *Wise v. T-Man, LLC*, No. 1:14 CV 630, 2016 WL 3544715 (N.D. Ohio June 29, 2016) the Secretary wholly ignores what it says about the importance of individuals held liable under the FLSA as employers generally needing to have an ownership interest or be corporate officers. In *Wise v. T-Man, LLC*, No. 1:14 CV 630, 2016 WL 3544715 at *8 (N.D. Ohio June 29, 2016).  The *Wise* court held that whether there is an ownership interest and whether the putative employer is a corporate officer are 'particularly relevant' and "[t]hus, **often absent an ownership interest or a role as an officer or director of a covered employer, individual restaurant managers will not be considered**

4

**"employers" for purposes of FLSA**." *Id.*(emphasis added). For all these reasons Engin Gunaydin is not an "employer" for purposes of Section 3(d) of the FLSA even if the Enterprise Test is mandated.

> ## II.  Defendants' Violations of Section 6 of the FLSA Were Neither Intentional nor Reckless – Not Willful – Where Empire Did Not Know and had no Reason to Know of the Violated Requirements of the Act

Defendants neither knew their failure to give notice under the tip credit rules and recordkeeping failures under the tip pool rules violated the FLSA, nor did they show reckless disregard for the matter of whether their conduct was prohibited by the FLSA, accordingly their actions were not willful and the relevant damages period should be only two years. Defendants maintain that its violations were made inadvertently, in good faith, and without any willful or reckless behavior on their part. The standard for willfulness in this Circuit is intentional or reckless disregard as the Supreme Court has dictated.

Defendants' "ordinary" violations of the Act lack the egregiousness necessary for a finding of willfulness, that is to say, there is not the kind of clear evidence of intentional or recklessness that might be apparent if ill will or malice were shown. No recklessness, no three-year statute.  Plaintiff relies on *Stone v. Troy Construction, LLC,* 935 F.3d 141, 149 (3d Cir. 2019) claiming that it states there is no requirement of egregiousness in this Circuit; *But see Souryavong v. Lackawanna Cty.*, 872 F.3d 122, 126-127 (3d Cir. 2017 that was relied upon by Defendants specifically contemplating the level of egregiousness necessary for a finding of willfulness in 2017, the Court opined in pertinent part:

> **First, decisions from our sister circuits indicate that an FLSA violation must have a degree of egregiousness that is lacking in Lackawanna County's case.** For example, a jury question on willfulness is present when a city is well aware of the FLSA's strictures, sets up a bureaucracy to classify pay and benefits and properly calculate overtime, and then despite all that allows a misclassification of a monthly payment to continue *for nine years*. *Id.* Similarly, there is a jury question on willfulness if a family fails to pay a nanny

a minimum wage, family testimony indicates the family "knew" about minimum wage laws, and the nanny's testimony was that the family required her to work twice as many hours as the family claimed, did not provide a contract or record her working hours, and instructed her to lie about her employment. *Davila v. Menendez*, 717 F.3d 1179, 1182–83, 1185 (11th Cir. 2013). **Here, nothing indicates Lackawanna County's violation could be attributed to any similar level of recklessness or ill will.**

*Id.* (emphasis added).  While the *Stone* case specifically disclaims the necessity of a showing of egregiousness it discussed in *Souryavong*, and reemphasizes the primacy of the knowing or reckless requirement set forth by the Supreme Court, one might see the earlier case as merely a recognition that the evidence for recklessness needs to be clear. For example, intentional or recklessness might be more readily apparent if ill will or malice were shown. Here it is not.  In the end though, Defendants argument is really as simple as a mere ordinary violation of the Act, especially in this instance where the Defendants had some good reasons to believe they were in compliance with the law, demonstrates neither intentionality (knowing violation) or recklessness, at worst, Defendants were negligent.  And again, even if the Court finds Empire's reliance on the prior DOL investigation and the failure of the four professional financial consultants it hired to correct their pay practices was "unreasonable", even that unreasonableness is mere negligence and not the recklessness needed to satisfy the Safeco standard that is the law of the land. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68, (2007); *see also Bey v. Dynamic Computing Servs. Corp.*, No. 3:18-CV-00120 JWS, 2019 WL 8226486, at *2 (D. Alaska Dec. 19, 2019) (citation omitted). "**Acting unreasonably with regard to one's legal obligations under the FLSA is not enough.**" *Id*. (emphasis added).

Defendants "had the right to assume after the first investigation that their practices with respect to" pay were compliant. *See* Marshall v. Roots Restaurant, Inc., 667 F2.d 559, 561 (6th Cir. 1982). Plaintiff may dispute whether the Defendants got a "clean bill of health" in the 1999 inspection, but the record speaks for itself of the *de minimus* violations DOL found. To wit, **after**

6

the Department of Labor interviewed individuals and reviewed numerous documents in 1999, Defendants were never informed by DOL that there was any issue with its pay practices or tip credits, and the only thing assessed was approximately sixty-four dollars of missed overtime payments after which the DOL never came back until the current investigation. (Trial Day 3 Transcript p. 35 ll. 3-18) (Trial Day 3 Transcript pp. 94-96) (1999 Investigation Record – previously attached to Plaintiff's Motion for Summary Judgment as Exhibit R – attached hereto as Exhibit D).  Furthermore, the relevant provisions of the FLSA have not changed since 1999. *Compare* 29 U.S.C.A. § 203 Effective August 7, 1998 *to* 29 U.S.C.A. § 203 Effective March 23, 2018. Nor did Empire diner change any of its pay policies or practices between 1999 and the DOL investigation that is at the heart of this case. (Trial Day 3 Transcript p. 73 l. 23 to p. 74 l. 1).  Indeed, the reasonableness of Defendants reliance on the prior investigation in the case at bar is even stronger than it was for the defendants in *Marshall.* In Marshall, the original DOL inspector did not even investigate the issue upon which the later violation was based during his first visit (uniform practices).  Here, Defendants were relying on an investigation that specifically looked at its pay practices under the same FLSA sections that exist unchanged today.

Defendants' violations of the statute do not themselves show willfulness. Plaintiff repeatedly supports its willfulness argument by exaggerating and reciting the details of Defendants' technical violations of the FLSA.  Again, we respectfully remind the Court that Defendants' liability here is premised on only three things, the failure to tell servers that they were entitled to minimum wage (a fact which government witnesses almost universally and unbelievably claimed they didn't know), the failure to keep the records of the amount of tips collected in the tip pool and then paid to bussers, and the miscalculation of overtime.  Technical violations all.  The black letter law is clear, and an ordinary violation of the statute such as the

accidental technical violations of the Act in this case where no employee was undercompensated do not rise to the level of willfulness the Supreme Court has held to be required under the Act. (the lowest hourly server rate for a full week calculable based on trial testimony was $9.08 per hour, highest was over $20 per hour). (*DPFOFCL ¶¶ 18, 41).*  In light of the Supreme Court's holding that there is a significant distinction between ordinary violations and willful violations, Plaintiff must show more than the facts underlying his claims that the FLSA was violated in order to show the three-year period applies. *Korndobler v. DNC Parks Resorts at Sequoia*, 2015 WL 3797625 at *7 (EDCA June 18, 2015(citing *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 130, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

For all these reasons, Defendants neither intentionally nor recklessly violated the FLSA, to the contrary they were acting in good faith with a reasonable belief they were in compliance with the act, their actions were not willful, and there is no reason nor justification to extend the back wage period from two years to three.

### III.    Liquidated Damages are Unwarranted

Defendants were objectively and reasonably entitled to believe their actions did not controvert the FLSA where they relied on a prior DOL investigation, a series of financial professionals including two payroll companies and two CPAs and where there was never an employee complaint of FLSA violation brought to their attention; liquidated damages are therefore inappropriate. (*DPFOFCL ¶¶ 30, 32, 37, 39, 40, 50, 53, 54, 55, 63, 65, 67).*  For all of the reasons stated in Defendants' Findings of Fact and Conclusions of Law and Defendants' Closing Memorandum Pursuant to the Court's Post-Trial Order (ECF no. 90), liquidated damages are unwarranted here.

**IV.     The Damages Period is Two Years
         and the Necessary Data is in Evidence**

All of the data necessary to find damages for any two- or three-year period the

Court may choose is contained in the spreadsheet that is Plaintiff's Exhibit 2.  Moreover,

the two-year period can begin no earlier than the earliest date available to Plaintiff on the

day the tolling Agreement was entered.  I cannot say I understand why that two-year

period isn't the one specified in Plaintiff's Complaint.  Plaintiff has argued repeatedly

that the tolling agreement somehow increases the damages period by 339 days. The way I

understand tolling agreements to work is that the statute of limitations is frozen in place

as of the date the tolling agreement is entered.  At the date the parties entered the tolling

agreement, the Secretary could seek some specific two years of back wages from that

point looking backwards and no further unless willfulness found then three years.  Upon

filing after the tolling period, the Secretary is entitled to earliest two or three year period

that was available at the time of entering the tolling agreement despite the fact that that 2

year period would now be before the date the Secretary could seek had the tolling

agreement never been entered. Defense counsel is not sure I understand the Secretary's

argument, but Plaintiff seems to be arguing that because the tolling agreement was in

effect for 339 days, the damages period is similarly increased by 339 days.  If that were

the case the government would have no incentive to complete its investigations because

the damages period would grow in length for each day the tolling agreement was in

effect. Defendant's position is simply that Plaintiff is entitled to a damages period of

exactly two years that begins no earlier than the earliest date the Secretary could have

claimed on the day the tolling agreement was entered.

Next, Plaintiff argues that Defendants need to offer an exhibit showing its

damages math. Defendants maintain that Plaintiff has entered a spreadsheet into evidence with all of the needed evidence. All that remains is to add the numbers for whatever specific two- or three-year period the Court decides is applicable.  There is certainly some likelihood that the Court may Order a two- or three-year damages period that uses neither Plaintiff nor Defendant's start and end dates. No new evidence is required for the Court to do that, the math is not evidence.  If Plaintiff's position were correct about the need for a defense exhibit, what would they argue if the Court should choose a starting date other than the one that they chose? Would they then concede they can't get damages because they haven't entered an exhibit covering the math for the specific date range the Court settled on? Of course not, the Court will choose whatever date range it finds appropriate and the numbers in government exhibit 2 will be summed for the server's minimum wage salaries between those dates inclusive.  The proffered defendants' exhibit is merely a demonstrative of the math if deceased servers are removed and Defendants' suggested dates for the beginning and ending of the two or three-year periods are accepted.  Moreover, the government can calculate the damages for any date range the Court chooses so long as it is contained within the data in Plaintiff Exhibit 2 with a simple Microsoft Excel keystroke.  One might expect the government will be willing to do that at the Court's request.

## **CONCLUSION**

For all of these reasons, the Defendants respectfully submit that This Honorable Court should rule:

1.  Engin Gunaydin is not an employer for purposes of Section 3(d) the FLSA;

2.  Defendants' violations of the Act were not willful and the back-pay damages period should be limited to two years beginning January 12, 2016 and continuing through January 14, 2018 ($418,635.44); and

3.  Defendants had a good faith and reasonable basis for their actions and the Secretary is not entitled to recover liquidated damages.

BELL & BELL LLP

By:   */s/ James A. Bell, IV*
James A. Bell IV
Attorney ID No. 81724
Christopher A. Macey, Jr.
Attorney ID No. 207800
Bell & Bell LLP
One Penn Center
1617 JFK Blvd. – Suite 1254
Philadelphia, PA 19103

*Attorneys for Defendants*

Dated: June 15, 2022